1  JASON M. WUCETICH (STATE BAR NO. 222113)
   jason@wukolaw.com
2  DIMITRIOS V. KOROVILAS (STATE BAR NO. 247230)
   dimitri@wukolaw.com
3  WUCETICH & KOROVILAS LLP
   222 N. Pacific Coast Hwy., Suite 2000
4  El Segundo, CA 90245
   Telephone:    (310) 335-2001
5  Facsimile:    (310) 364-5201

6  Attorneys for Plaintiffs
   MONIQUE GRAYES and CAROLYN SAUNDERS,
7  individually and on behalf of all others similarly situated

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  MONIQUE GRAYES and CAROLYN          CASE NO.
    SAUNDERS, individually and on behalf of
11  all others similarly situated,        CLASS ACTION

12              Plaintiffs,               COMPLAINT FOR:

13        v.                              (1) NEGLIGENCE
                                          (2) NEGLIGENCE PER SE
14  SNAP FINANCE LLC; SNAP RTO LLC;       (3) DECLARATORY JUDGMENT
    and DOES 1-100,                       (4) VIOLATION OF THE CAL.
15                                            CONSUMER PRIVACY ACT, CAL. CIV.
                Defendants.                   CODE § 1798.150
16                                        (5) VIOLATION OF THE CAL. CUSTOMER
                                              RECORDS ACT, CAL. CIV. CODE §
17                                            1798.84
                                          (6) VIOLATION OF THE CAL. UNFAIR
18                                            COMPETITION LAW, CAL. BUS. &
                                              PROF. CODE § 17200
19                                        (7) VIOLATION OF THE RIGHT TO
                                              PRIVACY, CAL. CONST. ART. 1, § 1
20
21                                        DEMAND FOR JURY TRIAL

22
23
24
25
26
27
28

## SUMMARY OF THE CASE

1.     This putative class action arises from Snap Finance LLC's and Snap RTO LLC's (hereinafter collectively "SNAP") negligent failure to implement and maintain reasonable cybersecurity procedures that resulted in a data breach of its systems on or around between June 23, 2022 and September 8, 2022.  Plaintiffs Monique Grayes and Carolyn Saunders (collectively herein "Plaintiffs")  bring this class action complaint to redress injuries related to the data breach, on behalf of themselves and a nationwide class and California subclass of similarly situated persons.  Plaintiffs assert claims on behalf of a nationwide class for negligence, negligence per se, declaratory judgment, and common law invasion of privacy.  Plaintiffs also bring claims on behalf of a California subclass for violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, the California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*, violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and for invasion of privacy based on the California Constitution, Art. 1, § 1.  Plaintiffs seek, among other things, compensatory damages, punitive and exemplary damages, injunctive relief, attorneys' fees, and costs of suit.  Plaintiffs further intend to amend this complaint to seek statutory damages on behalf of the California subclass upon expiration of the 30-day cure period pursuant to Cal. Civ. Code § 1798.150(b).

## PARTIES

2.     Plaintiff Monique Grayes is a citizen and resident of the State of California whose personal identifying information was part of the June 23, 2022 through September 8, 2022 data breach that is the subject of this action.

3.     Plaintiff Carolyn Saunders is a citizen and resident of the State of California whose personal identifying information was part of the June 23, 2022 through September 8, 2022 data breach that is the subject of this action.

4.     On information and belief, defendant Snap Finance LLC is a corporation organized and existed under the laws of the State of Utah, with corporate headquarters in West Valley City, Utah.

5.     On information and belief, defendant Snap RTO LLC is a corporation organized

- 2 -

1    and existed under the laws of the State of Utah, with corporate headquarters in West Valley City,

2    Utah.

3        6.      Plaintiffs bring this action on behalf of themselves, on behalf of the general public

4    as a Private Attorney General pursuant to California Code of Civil Procedure § 1021.5 and on

5    behalf of a class and subclass of similarly situated persons pursuant Federal Rule of Civil

6    Procedure 23.

7                              **JURISDICTION & VENUE**

8        7.      This Court has general personal jurisdiction over SNAP because, at all relevant

9    times, SNAP had systematic and continuous contacts with the State of California.  Defendants are

10   each registered to do business in California with the California Secretary of State.  Defendants

11   regularly contract with a multitude of businesses, organizations and consumers in California to

12   provide financing solutions to debt challenged consumers.  SNAP does in fact actually provide

13   such continuous and ongoing financing related services to such companies and consumers in

14   California.

15       8.      Furthermore, this Court has specific personal jurisdiction over SNAP because the

16   claims in this action stem from its specific contacts with the State of California — namely,

17   SNAP's provision of financing related services to a multitude of companies and consumers in

18   California, SNAP's collection, maintenance, and processing of the personal data of Californians

19   in connection with such services, SNAP's failure to implement and maintain reasonable security

20   procedures and practices with respect to that data, and the consequent cybersecurity attack and

21   security breach of such data from late June 2022 through early September 2022.

22       9.      This Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(d) in

23   that the mater in controversy exceeds the sum or value of $5,000,000, exclusive of interests and

24   costs, and is a class action in which members of the class defined herein include citizens of a

25   State different from the SNAP.  Specifically, Defendants are citizens of the states of Utah and the

26   plaintiff class and/or subclasses defined herein include citizens of other states, including

27   California.

28

10.     Venue is proper in the Northern District of California under 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district, specifically SNAP's provision of financing related services to companies and consumers in California, SNAP's collection, maintenance, and processing of the personal data of Californians in connection with such services, SNAP's failure to implement and maintain reasonable security procedures and practices with respect to that data, and the consequent security breach of such data in late June 2022 through early September 2022 that resulted from SNAP's failure.  In addition, Plaintiffs are informed and believe and thereon allege that members of the class and subclass defined below reside in the Northern District.

### INTRADISTRICT ASSIGNMENT

11.     Assignment to the San Francisco/Oakland divisions is proper because a substantial part of the events or omissions which give rise to the claims herein occurred within San Francisco County.  Further, pursuant to Civil L. R. 3-2(c), all civil actions which arise in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, or Sonoma shall be assigned to the San Francisco/Oakland Divisions.  A substantial part of the events or omissions giving rise to the claims herein occurred also within these counties and therefore assignment to the San Francisco/Oakland divisions is proper.

### FACTUAL BACKGROUND

12.     SNAP provides financing options for consumers to purchase goods and pay for those goods via long term financing options.  To date, SNAP has served more than 3 million consumers with its financing products.

13.     In connection with these financing related services, SNAP collects, stores, and processes sensitive personal data for hundreds of thousands of individuals.  In doing so, SNAP retains sensitive information including, but not limited to, bank account information, addresses, and social security numbers, among other things.

14.     As a corporation doing business in California, SNAP is legally required to protect personal information from unauthorized access, disclosure, theft, exfiltration, modification, use, or destruction.

- 4 -

15.     SNAP knew that it was a prime target for hackers given the significant amount of sensitive personal information processed through its computer data and storage systems.  SNAP's knowledge is underscored by the massive number of data breaches that have occurred in recent years.

16.     Despite knowing the prevalence of data breaches, SNAP failed to prioritize data security by adopting reasonable data security measures to prevent and detect unauthorized access to its highly sensitive systems and databases.  SNAP has the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized breaches.  SNAP failed to undertake adequate analyses and testing of its own systems, training of its own personnel, and other data security measures as described herein to ensure vulnerabilities were avoided or remedied and that Plaintiff's and class members' data were protected.

17.     Specifically, on or around June 23, 2022 through September 8, 2022, SNAP experienced a significant cybersecurity breach that was continuous and ongoing.

18.     On information and belief, the personal information SNAP collects and which was impacted by the cybersecurity attack includes individuals' name, social security number, driver's license number or state identification number, and financial account number.

19.     On or around December 2, 2022, SNAP filed a data breach notice with the Attorney General of California.  According to the notice, the breach resulted in the name, social security number, driver's license number or state identification number, and financial account number of certain individuals being compromised.  SNAP confirmed that an unauthorized party was able to gain access to its systems on between the dates of June 23, 2022 and September 8, 2022 and accessed certain information on its systems.  Plaintiffs received a copy of the data breach notice via United States mail service confirming that their personal identifying information was part of the data breach.

20.     Upon information and belief, the hackers responsible for the data breach stole the personal information of all SNAP's clients, including Plaintiffs'.  Because of the nature of the breach and of the personal information stored or processed by SNAP, Plaintiffs are informed and believe that all categories of personal information were further subject to unauthorized access,

disclosure, theft, exfiltration, modification, use, or destruction.   Plaintiffs are informed and believe that criminals would have no purpose for hacking SNAP other than to exfiltrate or steal, or destroy, use, or modify as part of their ransom attempts, the coveted personal information stored or processed by SNAP.

21.    The personal information exposed by SNAP as a result of its inadequate data security is highly valuable on the black market to phishers, hackers, identity thieves, and cybercriminals. Stolen personal information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

22.    When malicious actors infiltrate companies and copy and exfiltrate the personal information that those companies store, or have access to, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.

23.    The information compromised in this unauthorized cybersecurity attack involves sensitive personal identifying information, which is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. Whereas here, the information compromised is difficult and highly problematic to change—particularly social security numbers.

24.    Once personal information is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional personal information being harvested from the victim, as well as personal information from family, friends, and colleagues of the original victim.

25.    Unauthorized data breaches, such as these, facilitate identity theft as hackers obtain consumers' personal information and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' personal information to others who do the same.

26.    Federal and state governments have established security standards and issued recommendations to minimize unauthorized data disclosures and the resulting harm to individuals

and financial institutions. Indeed, the Federal Trade Commission ("FTC") has issued numerous guides for businesses that highlight the importance of reasonable data security practices.

27. According to the FTC, the need for data security should be factored into all business decision-making.[1] In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[2] Among other things, the guidelines note businesses should properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of the breach.

28. Also, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[3]

29. Highlighting the importance of protecting against unauthorized data disclosures, the FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect personal information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.

30. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[1] *See* Federal Trade Commission, Start with Security (June 2015), available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited November 16, 2022).
[2] *See* Federal Trade Commission, Protecting Personal Information: A Guide for Business (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf  (last visited November 16, 2022).
[3] *See id.*

31.     The FBI created a technical guidance document for Chief Information Officers and Chief Information Security Officers that compiles already existing federal government and private industry best practices and mitigation strategies to prevent and respond to ransomware attacks.  The document is titled *How to Protect Your Networks from Ransomware* and states that on average, more than 4,000 ransomware attacks have occurred daily since January 1, 2016. Yet, there are very effective prevention and response actions that can significantly mitigate the risks.[4] Preventative measure include:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used. Use

---

[4] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last viewed November 16, 2022).

application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[5]

32.    SNAP could have prevented the cybersecurity attack by properly utilizing best practices as advised by the federal government, as described in the preceding paragraphs, but failed to do so.

33.    SNAP's failure to safeguard against a cybersecurity attack is exacerbated by the repeated warnings and alerts from public and private institutions, including the federal government, directed to protecting and securing sensitive data.  Experts studying cybersecurity routinely identify companies such as SNAP that collect, process, and store massive amounts of data on cloud-based systems as being particularly vulnerable to cyberattacks because of the value of the personal information that they collect and maintain. Accordingly, SNAP knew or should have known that it was a prime target for hackers.

34.    According to the 2021 Thales Global Cloud Security Study, more than 40% of organizations experienced a cloud-based data breach in the previous 12 months. Yet, despite these incidents, the study found that nearly 83% of cloud-based businesses still fail to encrypt half of the sensitive data they store in the cloud.[6]

35.    Upon information and belief, SNAP did not encrypt Plaintiffs' and class members' personal information involved in the data breach.

36.    Despite knowing the prevalence of data breaches, SNAP failed to prioritize cybersecurity by adopting reasonable security measures to prevent and detect unauthorized access to its highly sensitive systems and databases. SNAP has the resources to prevent an attack, but neglected to adequately invest in cybersecurity, despite the growing number of well-publicized breaches. SNAP failed to fully implement each and all of the above-described data security best

---

[5] *Id.*
[6] Maria Henriquez, *40% of organizations have suffered a cloud-based data breach,* Security, Oct. 29, 2021, https://www.securitymagazine.com/articles/96412-40-of-organizations-have-suffered-a-cloud-based-datq-breach (last visited November 16, 2022).

1   practices. SNAP further failed to undertake adequate analyses and testing of its own systems,

2   training of its own personnel, and other data security measures to ensure vulnerabilities were

3   avoided or remedied and that Plaintiff's and class members' data were protected.

4                                    **Plaintiffs' Facts**

5          37.    Plaintiffs' and class members' personal identifying information, including their

6   names, contact information, financial account numbers and social security numbers, among other

7   confidential and private personal information, were in the possession, custody and/or control of

8   SNAP.   Plaintiffs believed that SNAP would protect and keep their personal identifying

9   information protected, secure and safe from unlawful disclosure

10         38.    After the data breach, Plaintiffs received notice of the data breach from SNAP  via

11  letter dated December 1, 2022.

12         39.    Plaintiffs have spent and will continue to spend time and effort monitoring their

13  accounts to protect themselves from identity theft.  Plaintiffs remain concerned for their personal

14  security and the uncertainty of what personal information was exposed to hackers and/or posted

15  to the dark web.

16         40.    As a direct and foreseeable result of SNAP's negligent failure to implement and

17  maintain reasonable data security procedures and practices and the resultant breach of its systems,

18  Plaintiffs and all class members, have suffered harm in that their sensitive personal information

19  has been exposed to cybercriminals and they have an increased stress, risk, and fear of identity

20  theft and fraud.  This is not just a generalized anxiety of possible identify theft, privacy, or fraud

21  concerns, but a concrete stress and risk of harm resulting from an actual breach and accompanied

22  by actual instances of reported problems suspected to stem from the breach.

23         41.    Upon information and belief, Plaintiffs' social security numbers and other personal

24  information was exfiltrated by the hackers who obtained unauthorized access to Plaintiffs' and

25  class members' personal information for unlawful purposes.

26         42.    Social security numbers are among the most sensitive kind of personal information

27  to have stolen because they may be put to a variety of fraudulent uses and are difficult for an

28  individual to change.  The Social Security Administration stresses that the loss of an individual's

social security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[7]

43.     Furthermore, Plaintiffs and class members are well aware that their sensitive personal information, including social security numbers and potentially banking information, risks being available to other cybercriminals on the dark web.  Accordingly, all Plaintiffs and class members have suffered harm in the form of increased stress, fear, and risk of identity theft and fraud resulting from the data breach.  Additionally, Plaintiffs and class members have incurred, and/or will incur, out-of-pocket expenses related to credit monitoring and identify theft prevention to address these concerns.

## **CLASS ACTION ALLEGATIONS**

44.     Plaintiffs bring this action on behalf of themselves and all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23, including Rule 23(b)(1)-(3) and (c)(4). Plaintiffs seek to represent the following class and subclasses:

> **Nationwide Class**.  All persons in the United States whose personal information was compromised in or as a result of SNAP's data breach on or around June 23, 2022 through September 8, 2022, which was announced on or around December 1, 2022.

> **California Subclass.**   All persons residing in California whose personal information was compromised in or as a result of SNAP's data breach on or around June 23, 2022 through September 8, 2022, which was announced on or around December 1, 2022.

Excluded from the class are the following individuals and/or entities:  SNAP and its parents, subsidiaries, affiliates, officers, directors, or employees, and any entity in which SNAP has a controlling interest; all individuals who make a timely request to be excluded from this

---

[7] *Identify Theft and Your Social Security Number*, Social Security Administration, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited November 16, 2022).

proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

45.     Plaintiffs reserve the right to amend or modify the class definitions with greater particularity or further division into subclasses or limitation to particular issues.

46.     This action has been brought and may be maintained as a class action under Rule 23 because there is a well-defined community of interest in the litigation and the proposed classes are ascertainable, as described further below:

    a.   Numerosity: The potential members of the class as defined are so numerous that joinder of all members of the class is impracticable.  While the precise number of class members at issue has not been determined, Plaintiffs believe the cybersecurity breach affected hundreds of thousands of individuals nationwide and at least many tens of thousands within California.

    b.   Commonality: There are questions of law and fact common to Plaintiffs and the class that predominate over any questions affecting only the individual members of the class.  The common questions of law and fact include, but are not limited to, the following:

       i.  Whether SNAP owed a duty to Plaintiffs and class members to exercise due care in collecting, storing, processing, and safeguarding their personal information;

      ii.  Whether SNAP breached those duties;

     iii.  Whether SNAP implemented and maintained reasonable security procedures and practices appropriate to the nature of the personal information of class members;

     iv.  Whether SNAP acted negligently in connection with the monitoring and/or protecting of Plaintiffs' and class members' personal information;

      v.  Whether SNAP knew or should have known that they did not employ reasonable measures to keep Plaintiffs' and class members' personal information secure and prevent loss or misuse of that personal information;

- 12 -

vi.   Whether SNAP adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

vii.   Whether SNAP caused Plaintiffs and class members damages;

viii.   Whether the damages SNAP caused to Plaintiffs and class members includes the increased risk and fear of identity theft and fraud resulting from the access and exfiltration, theft, or disclosure of their personal information;

ix.   Whether Plaintiffs and class members are entitled to credit monitoring and other monetary relief;

x.   Whether SNAP's failure to implement and maintain reasonable security procedures and practices constitutes negligence;

xi.   Whether SNAP's failure to implement and maintain reasonable security procedures and practices constitutes negligence per se;

xii.   Whether SNAP's failure to implement and maintain reasonable security procedures and practices constitutes violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a);

xiii.   Whether SNAP's failure to implement and maintain reasonable security procedures and practices constitutes violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and

xiv.   Whether the California subclass is entitled to actual pecuniary damages under the private rights of action in the California Customer Records Act, Cal. Civ. Code § 1798.84 and the California Consumer Privacy Act, Civ. Code § 1798.150, and the proper measure of such damages, and/or statutory damages pursuant § 1798.150(a)(1)(A) and the proper measure of such damages.

c.   Typicality.  The claims of the named Plaintiffs are typical of the claims of the class members because all had their personal information compromised as a result of

SNAP's failure to implement and maintain reasonable security measures and the consequent data breach.

     d.  <u>Adequacy of Representation</u>.  Plaintiffs will fairly and adequately represent the interests of the class.  Counsel who represent Plaintiffs are experienced and competent in consumer and employment class actions, as well as various other types of complex and class litigation.

     e.  <u>Superiority and Manageabilty</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Plaintiffs is not practicable, and questions of law and fact common to Plaintiffs predominate over any questions affecting only Plaintiff.  Each Plaintiff has been damaged and is entitled to recovery by reason of SNAP's unlawful failure to adequately safeguard their data.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  As any civil penalty awarded to any individual class member may be small, the expense and burden of individual litigation make it impracticable for most class members to seek redress individually.  It is also unlikely that any individual consumer would bring an action solely on behalf of himself or herself pursuant to the theories asserted herein.  Additionally, the proper measure of civil penalties for each wrongful act will be answered in a consistent and uniform manner.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action, as SNAP's records will readily enable the Court and parties to ascertain affected companies and their employees.

     47.  Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2) because SNAP has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the class as a whole.

48.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of the matters and the parties' interests therein.  Such particular issues include, but are not limited to:

a.   Whether SNAP owed a legal duty to Plaintiffs and class members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information;

b.   Whether SNAP breached that legal duty to Plaintiffs and class members to exercise due care in collecting, storing, processing, using, and safeguarding their personal information;

c.   Whether SNAP failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether SNAP failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information compromised in the breach; and

e.   Whether class members are entitled to actual damages, credit monitoring, injunctive relief, statutory damages, and/or punitive damages as a result of SNAP's wrongful conduct as alleged herein.

**FIRST CAUSE OF ACTION**
**(Negligence, By Plaintiffs and the Nationwide Class Against SNAP)**

49.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

50.     SNAP owed a duty to Plaintiffs and class members to exercise reasonable care in obtaining, storing, using, processing, deleting and safeguarding their personal information in its possession from being compromised, stolen, accessed, and/or misused by unauthorized persons. That duty includes a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information that were compliant with and/or better than industry-standard practices.  SNAP's duties included a duty to design, maintain, and test its

- 15 -

security systems to ensure that Plaintiffs' and class members' personal information was adequately secured and protected, to implement processes that would detect a breach of its security system in a timely manner, to timely act upon warnings and alerts, including those generated by its own security systems regarding intrusions to its networks, and to promptly, properly, and fully notify its customers, Plaintiffs, and class members of any data breach.

51.     SNAP's duties to use reasonable care arose from several sources, including but not limited to those described below.

52.     SNAP had a common law duty to prevent foreseeable harm to others.  This duty existed because Plaintiffs and class members were the foreseeable and probable victims of any inadequate security practices.  In fact, not only was it foreseeable that Plaintiffs and class members would be harmed by the failure to protect their personal information because hackers routinely attempt to steal such information and use it for nefarious purposes, but SNAP also knew that it was more likely than not Plaintiffs and other class members would be harmed.

53.     SNAP's duty also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as SNAP.

54.     Various FTC publications and data security breach orders further form the basis of SNAP's duty.  According to the FTC, the need for data security should be factored into all business decision making.[8]   In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[9]   Among other things, the guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

---

[8] *Start with Security, A Guide for Business*, FTC (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf
[9] *Protecting Personal Information, A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.  Additionally, the FTC recommends that companies limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.  The FBI has also issued guidance on best practices with respect to data security that also form the basis of SNAP's duty of care, as described above.[10]

55. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and class members' personal information, SNAP assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and class members' personal information from disclosure.

56. SNAP also had a duty to safeguard the personal information of Plaintiffs and class members and to promptly notify them of a breach because of state laws and statutes that require SNAP to reasonably safeguard personal information, as detailed herein, including Cal. Civ. Code § 1798.80 *et seq.*

57. Timely notification was required, appropriate, and necessary so that, among other things, Plaintiffs and class members could take appropriate measures to freeze or lock their credit profiles, cancel or change usernames or passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, develop alternative timekeeping methods or other tacks to avoid untimely or inaccurate wage payments, and take other steps to mitigate or ameliorate the damages caused by SNAP's misconduct.

58. Plaintiffs and class members have taken reasonable steps to maintain the

---

[10] *How to Protect Your Networks from Ransomware*, FBI, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view  (last viewed November 16, 2022).

confidentiality of their personal information.

59.     SNAP breached the duties it owed to Plaintiffs and class members described above and thus was negligent.  SNAP breached these duties by, among other things, failing to:  (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the personal information of Plaintiffs and class members; (b) prevent the breach; (c) detect the breach while it was ongoing and continuous for several months; (d) maintain security systems consistent with industry; (e) timely disclose that Plaintiffs' and class members' personal information in SNAP's possession had been or was reasonably believed to have been stolen or compromised; (f) failing to comply fully even with its own purported security practices.

60.     SNAP knew or should have known of the risks of collecting and storing personal information and the importance of maintaining secure systems, especially in light of the increasing frequency of ransomware attacks. The sheer scope of SNAP's operations further shows that SNAP knew or should have known of the risks and possible harm that could result from its failure to implement and maintain reasonable security measures.  On information and belief, this is but one of the several vulnerabilities that plagued SNAP's systems and led to the data breach.

61.     Through SNAP's acts and omissions described in this complaint, including SNAP's failure to provide adequate security and its failure to protect the personal information of Plaintiff and class members from being foreseeably captured, accessed, exfiltrated, stolen, disclosed, accessed, and misused, SNAP unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and class members' personal information.

62.     SNAP further failed to timely and accurately disclose to customers, Plaintiffs, and class members that their personal information had been improperly acquired or accessed and was available for sale to criminals on the dark web.  The breach was continuous and ongoing for several months over the summer of 2022 and SNAP determined Plaintiffs' and class member's data was part of the breach in October 2022, but failed to disclose the breach of Plaintiffs and class members until December 2022.  Plaintiffs and class members could have taken action to protect their personal information during this long period, but were unable to do so because they

1   were not timely notified of the breach.

2   63.   But for SNAP's wrongful and negligent breach of its duties owed to Plaintiffs and

3   class members, their personal information would not have been compromised.

4   64.   Plaintiffs and class members relied on SNAP to keep their personal information

5   confidential and securely maintained, and to use this information for business purposes only, and

6   to make only authorized disclosures of this information.

7   65.   As a direct and proximate result of SNAP's negligence, Plaintiffs and class

8   members have been injured as described herein, and are entitled to damages, including

9   compensatory, punitive, and nominal damages, in an amount to be proven at trial.  As a result of

10  SNAP's failure to protect Plaintiffs' and class members' personal information, Plaintiffs' and

11  class members' personal information has been accessed by malicious cybercriminals.  Plaintiffs'

12  and the class members' injuries include:

13      a.   theft of their personal information;

14      b.   costs associated with requested credit freezes;

15      c.   costs associated with the detection and prevention of identity theft and

16         unauthorized use of their financial accounts;

17      d.   costs associated with purchasing credit monitoring and identity theft protection

18         services;

19      e.   unauthorized charges and loss of use of and access to their financial account funds

20         and costs associated with the inability to obtain money from their accounts or

21         being limited in the amount of money they were permitted to obtain from their

22         accounts, including missed payments on bills and loans, late charges and fees, and

23         adverse effects on their credit;

24      f.   lowered credit scores resulting from credit inquiries following fraudulent

25         activities;

26      g.   costs associated with time spent and loss of productivity from taking time to

27         address and attempt to ameliorate, mitigate, and deal with the actual and future

28         consequences of the data breach, including finding fraudulent charges, cancelling

- 19 -

and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

h. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information being placed in the hands of criminals;

i. damages to and diminution of value of their personal information entrusted, directly or indirectly, to SNAP with the mutual understanding that SNAP would safeguard Plaintiffs' and the class members' data against theft and not allow access and misuse of their data by others;

j. continued risk of exposure to hackers and thieves of their personal information, which remains in SNAP's possession and is subject to further breaches so long as SNAP fails to undertake appropriate and adequate measures to protect Plaintiffs and class members, along with damages stemming from the stress, fear, and anxiety of an increased risk of identity theft and fraud stemming from the breach;

k. loss of the inherent value of their personal information;

l. the loss of the opportunity to determine for themselves how their personal information is used; and

m. other significant additional risk of identity theft, financial fraud, and other identity-related fraud in the indefinite future.

66. In connection with the conduct descried above, SNAP acted wantonly, recklessly, and with complete disregard for the consequences Plaintiffs and class members would suffer if their highly sensitive and confidential personal information, including but not limited to name, company name, address, social security numbers, and banking and credit card information, was access by unauthorized third parties.

## SECOND CAUSE OF ACTION
### (Negligence Per Se, By Plaintiffs and the Nationwide Class Against SNAP)

67. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully

set forth herein.

68.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal information by companies such as SNAP.  Various FTC publications and data security breach orders further form the basis of SNAP's duty.  In addition, individual states have enacted statutes based on the FTC Act that also created a duty.

69.    SNAP violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with industry standards.  SNAP's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach.

70.    SNAP's violation of Section 5 of the FTC Act constitutes negligence *per se*.

71.    Plaintiffs and class members are consumers within the class of persons Section 5 of the FTC Act was meant to protect.

72.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.  Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and the class.

73.    As a direct and proximate result of SNAP's negligence, Plaintiffs and class members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**(Declaratory Judgment, By Plaintiffs and the Nationwide Class Against SNAP)**

74.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

75.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here,

- 21 -

that are tortious and violate the terms of the federal and state statutes described in this complaint.

76. An actual controversy has arisen in the wake of the SNAP data breach regarding its present and prospective common law and other duties to reasonably safeguard consumers personal identifying information in its possession, custody and/or control and regarding whether SNAP is currently maintaining data security measures adequate to protect Plaintiffs and class members from further data breaches that compromise their personal information. Plaintiffs allege that SNAP's data security measures remain inadequate. SNAP denies these allegations. Plaintiffs continue to suffer injury as a result of the compromise of their personal information and remain at imminent risk that further compromises of their personal information will occur in the future.

77. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. SNAP continues to owe a legal duty to secure consumers' personal information, including Plaintiffs' and class members' personal information, to timely notify them of a data breach under the common law, Section 5 of the FTC Act; and

    b. SNAP continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and class members' personal information.

78. The Court should issue corresponding prospective injunctive relief requiring SNAP to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and class members' personal information and timekeeping and payroll services.

79. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at SNAP. The risk of another such breach is real, immediate, and substantial. If another breach at SNAP occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

80. The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to SNAP if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiffs and class members will likely be subjected to substantial identity theft and other

damage.  On the other hand, the cost to SNAP of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and SNAP has a pre-existing legal obligation to employ such measures.

81.     Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the additional injuries that would result to Plaintiffs and the thousands of class members whose confidential information would be further compromised.

## FOURTH CAUSE OF ACTION

**(Violation of the California Consumer Privacy Act,
Cal. Civ. Code §§ 1798.100 *et seq.*, § 1798.150(a)
By Plaintiffs and the California Subclass Against SNAP)**

82.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

83.     The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA.  Section 1798.150(a) specifically provides:

> Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

> (B) Injunctive or declaratory relief.

> (C) Any other relief the court deems proper.

84.     SNAP is a "business" under § 1798.140(b) in that it is a corporation organized for profit or financial benefit of its shareholders or other owners, with gross revenue in excess of $25 million.

85.     Plaintiffs and California subclass members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

86.     The personal information of Plaintiffs and the California subclass at issue in this lawsuit constitutes "personal information" under § 1798.150(a) and 1798.81.5, in that the personal information SNAP collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

87.     SNAP knew or should have known that its computer systems and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach or theft was highly likely.  SNAP failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiffs and the California subclass.  Specifically, SNAP subjected Plaintiffs' and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the SNAP's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

88.     As a direct and proximate result of SNAP's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiffs' and class members' personal information included exfiltration, theft, or disclosure through SNAP's servers, systems, and website, and/or

- 24 -

the dark web, where hackers further disclosed the personal identifying information alleged herein.

89.     As a direct and proximate result of SNAP's acts, Plaintiffs and the California subclass were injured and lost money or property, including but not limited to the loss of Plaintiffs' and the subclass's legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

90.     Section 1798.150(b) specifically provides that "[n]o [prefiling] notice shall be required prior to an individual consumer initiating an action solely for actual pecuniary damages." Accordingly, Plaintiffs and the California subclass by way of this complaint seek actual pecuniary damages suffered as a result of SNAP's violations described herein.  Plaintiffs have issued and/or will issue a notice of these alleged violations pursuant to § 1798.150(b) and intends to amend this complaint to seek statutory damages and injunctive relief upon expiration of the 30-day cure period pursuant to § 1798(a)(1)(A)-(B), (a)(2), and (b).

**FIFTH CAUSE OF ACTION**
**(Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*,**
**By Plaintiffs and the California Subclass Against SNAP)**

91.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

92.     Cal. Civ. Code § 1798.81.5 provides that "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected.  To that end, the purpose of this section is to encourage businesses that own, license, or maintain personal information about Californians to provide reasonable security for that information."

93.     Section 1798.81.5(b) further states that: "[a] business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

94.     Cal. Civ. Code § 1798.84(b) provides that [a]ny customer injured by a violation of

this title may institute a civil action to recover damages." Section 1798.84(e) further provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined."

95. Plaintiffs and members of the California subclass are "customers" within the meaning of Civ. Code § 1798.80(c) and 1798.84(b) because they are individuals who provided personal information to SNAP, directly and/or indirectly, for the purpose of obtaining a service from SNAP.

96. The personal information of Plaintiffs and the California subclass at issue in this lawsuit constitutes "personal information" under § 1798.81.5(d)(1) in that the personal information SNAP collects and which was impacted by the cybersecurity attack includes an individual's first name or first initial and the individual's last name in combination with one or more of the following data elements, with either the name or the data elements not encrypted or redacted: (i) Social security number; (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; (iii) account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account; (iv) medical information; (v) health insurance information; (vi) unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual.

97. SNAP knew or should have known that its computer systems and data security practices were inadequate to safeguard the California subclass's personal information and that the risk of a data breach or theft was highly likely. SNAP failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiffs and the California subclass. Specifically, SNAP failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information of Plaintiffs and the California subclass from unauthorized access, destruction, use, modification, or disclosure. SNAP further

- 26 -

subjected Plaintiffs' and the California subclass's nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the SNAP's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

98.    As a direct and proximate result of SNAP's violation of its duty, the unauthorized access, destruction, use, modification, or disclosure of the personal information of Plaintiffs and the California subclass included hackers' access to, removal, deletion, destruction, use, modification, disabling, disclosure and/or conversion of the personal information of Plaintiffs and the California subclass by the ransomware attackers and/or additional unauthorized third parties to whom those cybercriminals sold and/or otherwise transmitted the information.

99.    As a direct and proximate result of SNAP's acts or omissions, Plaintiffs and the California subclass were injured and lost money or property including, but not limited to, the loss of Plaintiffs' and the subclass's legally protected interest in the confidentiality and privacy of their personal information, nominal damages, and additional losses described above.  Plaintiffs seek compensatory damages as well as injunctive relief pursuant to Cal. Civ. Code § 1798.84(b).

100.    Moreover, the California Customer Records Act further provides: "A person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of the breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."  Cal. Civ. Code § 1798.82.

101.    Any person or business that is required to issue a security breach notification under the CRA must meet the following requirements under §1798.82(d):

   a.  The name and contact information of the reporting person or business subject to this section;

   b.  A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

   c.  If the information is possible to determine at the time the notice is provided, then

any of the following:

   i.   the date of the breach,

   ii.  the estimated date of the breach, or

   iii. the date range within which the breach occurred. The notification shall also include the date of the notice;

d. Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided;

e. A general description of the breach incident, if that information is possible to determine at the time the notice is provided;

f. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number;

g. If the person or business providing the notification was the source of the breach, an offer to provide appropriate identity theft prevention and mitigation services, if any, shall be provided at no cost to the affected person for not less than 12 months along with all information necessary to take advantage of the offer to any person whose information was or may have been breached if the breach exposed or may have exposed personal information.

102.   SNAP failed to provide the legally compliant notice under § 1798.82(d) to Plaintiffs and members of the California subclass.  On information and belief, to date, SNAP has not sent written notice of the data breach to all impacted individuals.  As a result, SNAP has violated § 1798.82 by not providing legally compliant and timely notice to Plaintiffs and class members.  The breach was continuous and ongoing for several months over the summer of 2022 and SNAP determined Plaintiffs' and class member's data was part of the breach in October 2022, but failed to timely disclose the breach of Plaintiffs and class members until December 2022.  Plaintiffs and class members could have taken action to protect their personal information during this long period, but were unable to do so because they were not timely notified of the breach.

103.    On information and belief, many class members affected by the breach, have not received any notice at all from SNAP in violation of Section 1798.82(d).

104.    As a result of the violations of Cal. Civ. Code § 1798.82, Plaintiffs and class members suffered incrementally increased damages separate and distinct from those simply caused by the breaches themselves.

105.    As a direct consequence of the actions as identified above, Plaintiffs and class members incurred additional losses and suffered further harm to their privacy, including but not limited to economic loss, the loss of control over the use of their identity, increased stress, fear, and anxiety, harm to their constitutional right to privacy, lost time dedicated to the investigation of the breach and effort to cure any resulting harm, the need for future expenses and time dedicated to the recovery and protection of further loss, and privacy injuries associated with having their sensitive personal, financial, and payroll information disclosed, that they would not have otherwise incurred, and are entitled to recover compensatory damages according to proof pursuant to § 1798.84(b).

**<u>SIXTH CAUSE OF ACTION</u>**
**(Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*
By Plaintiffs and the California Subclass Against SNAP)**

106.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

107.    SNAP is a "person" defined by Cal. Bus. & Prof. Code § 17201.

108.    SNAP violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

109.    SNAP' "unfair" acts and practices include:

a.    SNAP failed to implement and maintain reasonable security measures to protect Plaintiffs' and California subclass members' personal information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the SNAP data breach. SNAP failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security

following previous cybersecurity incidents and known coding vulnerabilities in the industry;

b.  SNAP's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act (15 U.S.C. § 45), California's Customer Records Act (Cal. Civ. Code § 1798.80 *et seq.*), and California's Consumer Privacy Act (Cal. Civ. Code § 1798.150);

c.  SNAP's failure to implement and maintain reasonable security measures also led to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of SNAP's inadequate security, consumers could not have reasonably avoided the harms that SNAP caused; and

d.  Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

110.  SNAP has engaged in "unlawful" business practices by violating multiple laws, including California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 (requiring reasonable data security measures) and 1798.82 (requiring timely breach notification), California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1780, *et seq.*, the FTC Act, 15 U.S.C. § 45, and California common law.

111.  SNAP's unlawful, unfair, and deceptive acts and practices include:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and California subclass members' personal information, which was a direct and proximate cause of the SNAP data breach;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the SNAP data breach;

c.  Failing to comply with common law and statutory duties pertaining to the security

and privacy of Plaintiffs' and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150, which was a direct and proximate cause of the SNAP data breach;

    d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and California subclass members' personal information, including by implementing and maintaining reasonable security measures;

    e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150;

    f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California subclass members' personal information; and

    g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California subclass members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.150.

112.   SNAP's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of SNAP's data security and ability to protect the confidentiality of consumers' personal information.

113.   As a direct and proximate result of SNAP's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California subclass members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and

omissions alleged herein, monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

114.    SNAP's violations were, and are, willful, deceptive, unfair, and unconscionable.

115.    Plaintiffs and class members have lost money and property as a result of SNAP's conduct in violation of the UCL, as stated herein and above.

116.    By deceptively storing, collecting, and disclosing their personal information, SNAP has taken money or property form Plaintiffs and class members.

117.    SNAP acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and California subclass members' rights. Past data breaches put it on notice that its security and privacy protections were inadequate.

118.    Plaintiffs and California subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from SNAP's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## SEVENTH CAUSE OF ACTION
### (Invasion of Privacy)

**(Count 1 – Common Law Invasion of Privacy – Intrusion Upon Seclusion
By Plaintiffs and the Nationwide Class Against SNAP)**

119.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

120.    To assert claims for intrusion upon seclusion, one must plead (1) that the defendant intentionally intruded into a matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

121.    SNAP intentionally intruded upon the solitude, seclusion and private affairs of Plaintiffs and class members by intentionally configuring their systems in such a way that left

them vulnerable to malware/ransomware attack, thus permitting unauthorized access to their systems, which compromised Plaintiffs' and class members' personal information. Only SNAP had control over its systems.

122.   SNAP's conduct is especially egregious and offensive as they failed to have adequate security measures in place to prevent, track, or detect in a timely fashion unauthorized access to Plaintiff's and class members' personal information.

123.   At all times, SNAP was aware that Plaintiffs' and class members' personal information in their possession contained highly sensitive and confidential personal information.

124.   Plaintiffs and class members have a reasonable expectation of privacy in their personal information, which also contains highly sensitive medical information.

125.   SNAP intentionally configured their systems in such a way that stored Plaintiffs' and class members' personal information to be left vulnerable to malware/ransomware attack without regard for Plaintiffs' and class members' privacy interests.

126.   The disclosure of the sensitive and confidential personal information of thousands of consumers, was highly offensive to Plaintiffs and class members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

127.   SNAP's conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive information, in addition to social norms. SNAP's conduct would be especially egregious to a reasonable person as SNAP publicly disclosed Plaintiffs' and class members' sensitive and confidential personal information without their consent, to an "unauthorized person," i.e., hackers.

128.   As a result of SNAP's actions, Plaintiffs and class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

129.   Plaintiffs and class members have been damaged as a direct and proximate result of SNAP's intrusion upon seclusion and are entitled to just compensation.

130.   Plaintiffs and class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and

heightened stress, fear, anxiety and risk of future invasions of privacy.

**(Count 2 –Invasion of Privacy – Cal. Const. Art. 1, § 1
By Plaintiffs and the California Subclass Against SNAP)**

131.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

132.    Art. I, § 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I, § 1, Cal. Const.

133.    The right to privacy in California's constitution creates a private right of action against private and government entities.

134.    To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

135.    SNAP violated Plaintiffs' and class members' constitutional right to privacy by collecting, storing, and disclosing their personal information in which they had a legally protected privacy interest, and in which they had a reasonable expectation of privacy in, in a manner that was highly offensive to Plaintiffs and class members, would be highly offensive to a reasonable person, and was an egregious violation of social norms.

136.    SNAP has intruded upon Plaintiffs' and class members' legally protected privacy interests, including interests in precluding the dissemination or misuse of their confidential personal information.

137.    SNAP's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely the misuse of information gathered for an improper purpose; and (ii) the invasion deprived Plaintiffs and class members of the ability to control the circulation of their personal information, which is considered fundamental to the right

- 34 -

to privacy.

138.    Plaintiffs and class members had a reasonable expectation of privacy in that: (i) SNAP's invasion of privacy occurred as a result of SNAP's security practices including the collecting, storage, and unauthorized disclosure of consumers' personal information; (ii) Plaintiffs and class members did not consent or otherwise authorize SNAP to disclosure their personal information; and (iii) Plaintiffs and class members could not reasonably expect SNAP would commit acts in violation of laws protecting privacy.

139.    As a result of SNAP's actions, Plaintiffs and class members have been damaged as a direct and proximate result of SNAP's invasion of their privacy and are entitled to just compensation.

140.    Plaintiffs and class members suffered actual and concrete injury as a result of SNAP's violations of their privacy interests. Plaintiffs and class members are entitled to appropriate relief, including damages to compensate them for the harm to their privacy interests, loss of valuable rights and protections, heightened stress, fear, anxiety, and risk of future invasions of privacy, and the mental and emotional distress and harm to human dignity interests caused by Defendants' invasions.

141.    Plaintiffs and class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and class members for the harm to their privacy interests as well as disgorgement of profits made by SNAP as a result of its intrusions upon Plaintiff's and class members' privacy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the nationwide class, and the California subclass, pray for the following relief:

1. An order certifying the nationwide class and California subclass as defined above pursuant to Fed. R. Civ. P. 23 and declaring that Plaintiffs are proper class representatives and appointing Plaintiffs' counsel as class counsel;

2. Permanent injunctive relief to prohibit SNAP from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. Compensatory, consequential, general, and nominal damages in an amount to be proven at trial, in excess of $5,000,000;

4. Disgorgement and restitution of all earnings, profits, compensation, and benefits received as a result of the unlawful acts, omissions, and practices described herein;

5. Punitive, exemplary, and/or trebled damages to the extent permitted by law;

6. Plaintiffs intend to amend this complaint to seek statutory damages on behalf of the California subclass upon expiration of the 30-day cure period pursuant to Cal. Civ. Code § 1798.150(b);

7. A declaration of right and liabilities of the parties;

8. Costs of suit;

9. Reasonable attorneys' fees, including pursuant to Cal. Civ. Pro. Code § 1021.5;

10. Pre- and post-judgment interest at the maximum legal rate;

11. Distribution of any monies recovered on behalf of members of the class or the general public via fluid recovery or *cy pres* recovery where necessary and as applicable to prevent Defendants from retaining the benefits of their wrongful conduct; and

12. Such other relief as the Court deems just and proper.

Dated: January 5, 2023

WUCETICH & KOROVILAS LLP

By:    /s/ Jason M. Wucetich
JASON M. WUCETICH
Attorneys for Plaintiff MONIQUE GRAYES and
CAROLYN SAUNDERS,
individually and on behalf of
all others similarly situated

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the putative class and subclass, hereby demand a trial by jury on all issues of fact or law so triable.

Dated: January 5, 2023                          WUCETICH & KOROVILAS LLP

By:            /s/ Jason M. Wucetich
JASON M. WUCETICH
Attorneys for Plaintiffs MONIQUE GRAYES and
CAROLYN SAUNDERS,
individually and on behalf of
all others similarly situated

- 37 -